1  Kevin F. Ruf (136901)
   GLANCY PRONGAY & MURRAY LLP
2  1925 Century Park East, Suite 2100
3  Los Angeles, California 90067
   Telephone: (310) 201-9150
4  Facsimile: (310) 201-9160
5  Email: info@glancylaw.com

6  Lee Albert (*pro hac vice forthcoming*)
7  Garth Spencer (*pro hac vice forthcoming*)
   GLANCY PRONGAY & MURRAY LLP
8  230 Park Avenue, Suite 530
9  New York, New York 10169
   Telephone: (212) 682-5340
10 Facsimile: (212) 884-0988
11 Email: lalbert@glancylaw.com
   Email: gspencer@glancylaw.com
12
13 *Attorneys for Plaintiffs Park 101 LLC and Louisiana Purchase LLC dba Louisiana Purchase SD*
14

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARK 101 LLC and LOUISIANA PURCHASE LLC dba LOUISIANA PURCHASE SD, <br><br> Plaintiffs, <br> vs. <br><br> LIBERTY MUTUAL GROUP INC., LIBERTY MUTUAL INSURANCE COMPANY, AMERICAN FIRE AND CASUALTY COMPANY, and OHIO SECURITY INSURANCE COMPANY, <br><br> Defendants. | Civil Action No. **'20CV0972 AJB  BLM** <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiffs Park 101 LLC and Louisiana Purchase LLC dba Louisiana Purchase SD ("Plaintiffs"), individually and on behalf of the members of Class and the California Sub-Class, bring this action against Defendants Liberty Mutual Group Inc., Liberty Mutual Insurance Company, American Fire and Casualty Company, and Ohio Security Insurance Company ("Liberty Mutual" or "Defendants") and allege as follows:

## NATURE OF THE ACTION

1. This action arises from Defendants' wrongful denial of insurance claims made to recover losses related to the COVID-19 pandemic and the related government-issued closure orders.

2. Plaintiffs bring this action on behalf of themselves and on behalf of a proposed class consisting of all persons and entities in the United States insured under a Liberty Mutual policy for business income, extra expense, or civil authority coverage, who suffered a covered loss related to the COVID-19 pandemic and the related government-issued closure orders, which loss was denied by Defendants.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000 and there is diversity of citizenship between the parties.

4. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(d). This is a class action on behalf of more than 100 class members, in which the amount in controversy exceeds $5,000,000 and there is diversity of citizenship between the parties.

5. Venue is proper in this district under 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to this action occurred in this District.

6. Defendants regularly conduct business in this District. Defendants Liberty Mutual Insurance Company, American Fire and Casualty Company, and Ohio

Security Insurance Company are licensed insurance companies in the State of California.

## PARTIES

7. Plaintiff Park 101 LLC is a California Limited Liability Company, and operates the Park 101 restaurant in Carlsbad, California, with its principal place of business in San Diego County.

8. Plaintiff Louisiana Purchase LLC dba Louisiana Purchase SD ("Louisiana Purchase LLC") is a California Limited Liability Company, and operates the Louisiana Purchase restaurant in San Diego, California, with its principal place of business in San Diego County.

9. Defendant Liberty Mutual Group Inc. ("Liberty Mutual Group") is a Massachusetts corporation headquartered at 175 Berkeley Street, Boston, Massachusetts 02116. Although Liberty Mutual Group is not licensed as an insurance company in the State of California, many of its subsidiaries are so licensed, including the other Defendants. At all times hereto, Liberty Mutual Group was doing substantial business in the State of California.

10. Defendant Liberty Mutual Insurance Company ("Liberty Mutual Co.") is a Massachusetts corporation headquartered at 175 Berkeley Street, Boston, Massachusetts 02116. Defendant Liberty Mutual Insurance Company is a wholly owned subsidiary of Defendant Liberty Mutual Group Inc.  At all times hereto, Liberty Mutual Co. was doing substantial business in the State of California.

11.  Defendants Liberty Mutual Group and Liberty Mutual Co. are heretofore known as "Liberty Ins."

12. Defendant American Fire and Casualty Company is a New Hampshire corporation headquartered at 175 Berkeley Street, Boston, Massachusetts 02116. Defendant American Fire and Casualty Company is a wholly owned subsidiary of Defendant Liberty Mutual Group Inc. Defendant American Fire and Casualty

Company is a party to the insurance policy of Plaintiff Louisiana Purchase LLC that is at issue in this action.

13. Defendant Ohio Security Insurance Company is a New Hampshire corporation headquartered at 175 Berkeley Street, Boston, Massachusetts 02116. Defendant Ohio Security Insurance Company is a wholly owned subsidiary of Defendant Liberty Mutual Group Inc. Defendant Ohio Security Insurance Company is a party to the insurance policy of Plaintiff Park 101 LLC that is at issue in this action.

14. Defendants Liberty Ins., American Fire and Casualty Company, and Ohio Security Insurance Company are collectively referred to as "Defendants."

15. Defendants and their Liberty Mutual affiliates operate the fourth largest property and casualty insurance business in the United States, writing over $35 billion in premiums in 2019.

## FACTUAL BACKGROUND

**A.    The Parties' Insurance Contracts**

16. Plaintiff Park 101 LLC entered a contract for insurance with the Defendants, with policy number BKA (20) 57 77 96 64, for the effective dates May 21, 2019 through May 21, 2020.

17. Plaintiff Louisiana Purchase LLC entered a contract for insurance with the Defendants, with policy number BKS (21) 59 56 86 10, for the effective dates March 5, 2020 through March 5, 2021.

18. These insurance policies use standard form language used by Defendants in many their insurance policies with insureds nationwide.

19. These insurance policies incorporate a document titled BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM, which is identified by the control number CP 00 30 04 02. This document uses standard form language used by Defendants in many their insurance policies with insureds nationwide.

20. Plaintiffs' insurance policies provide coverage for the insured's loss of business income due to suspension of operations, stating in part "We will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'."

21. Plaintiffs' insurance policies also provide coverage for extra expense incurred as a result of a suspension of operations, stating in part:

> We will pay Extra Expense (other than the expense to repair or replace property) to:
>
> (1) Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.
>
> (2) Minimize the "suspension" of business if you cannot continue "operations".
>
> We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

22. Plaintiffs' insurance policies also provide coverage for loss of business income or extra expense arising from any action of a civil authority that prohibits access to the insured property, stating in part:

> We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

**B.     The COVID-19 Pandemic**

23. The novel coronavirus SARS-CoV-2 was first detected in humans in late 2019 in Wuhan, China.

24. The SARS-CoV-2 virus is highly contagious in humans.

25. The SARS-CoV-2 virus can be spread through direct person-to-person contact; through aerosolized droplets expelled through coughing, speaking or sneezing; or through contact with a virus-contaminated surface such as a table, doorknob, or handrail.

26. The disease caused by the SARS-CoV-2 virus is called COVID-19.

27. COVID-19 can produce severe symptoms including respiratory failure and death.

28. The SARS-CoV-2 virus has spread rapidly throughout the world and the United States.

29. The first confirmed COVID-19 case in the United States was recorded on January 20, 2020 in Washington State.

30. The first confirmed COVID-19 case in California was recorded on January 26, 2020.

31. The first confirmed COVID-19 case in San Diego County was recorded on March 7, 2020.

32. As of March 15, 2020, there were over 165,000 confirmed cases worldwide and 6,500 deaths. By May 4, 2020 there were over 3.5 million confirmed cases worldwide and 248,000 deaths.

33. As of March 15, 2020, there were over 3,600 confirmed cases in the United States and 73 deaths. By May 4, 2020 there were over 1.1 million confirmed cases in the U.S. and 65,000 deaths.

34. As of March 15, 2020, there were 335 confirmed cases in California and 6 deaths. By May 2, 2020 there were 53,616 confirmed cases in California and 2,215 deaths.

35. As of March 15, 2020, there were 25 confirmed cases in San Diego County. By May 2, 2020 there were 3,927 confirmed cases in San Diego County and 139 deaths.

36. Actual numbers of cases and deaths in all regions are believed to be much higher than confirmed and reported figures, due in part to limited testing availability and the prevalence of asymptomatic or mild infections.

37. The SARS-CoV-2 virus is believed to have spread throughout the United States earlier than the first reported confirmed cases, due in part to limited testing availability and the prevalence of asymptomatic or mild infections.

**C.     Government-Issued Closure Orders Relating to the Pandemic**

38. To slow the spread of the COVID-19 pandemic, governmental authorities worldwide and at all levels throughout the United States have implemented unprecedented restrictions on individuals' movements and business activities.

39. On January 30, 2020 the World Health Organization declared the SARS-CoV-2 outbreak to be an international public health emergency.

40. On January 31, 2020 the U.S. Department of Health and Human Services declared the SARS-CoV-2 outbreak to be a public health emergency.

41. On March 4, 2020 California Governor Gavin Newsom declared a state of emergency relating to COVID-19.

42. On March 12, 2020 California Governor Newsom issued Executive Order N-25-20, ordering California residents to follow guidance from state and local public health officials including social distancing measures.

43. On March 12, 2020 San Diego Mayor Kevin Faulconer declared a local emergency in response to the COVID-19 outbreak.

44. On March 16, 2020 San Diego Mayor Faulconer issued Executive Order No. 2020-1 prohibiting all gatherings of 50 or more people and discouraging all social gatherings of any size. This order also closed all bars in San Diego, and prohibited restaurants from serving dine-in customers.

45. On March 19, 2020 California Governor Gavin Newsom issued Executive Order N-33-20, ordering California residents to stay at home, and closing non-essential businesses such as dine-in restaurants and bars.

46. Similar closure measures to the foregoing have been enacted by state and local governments throughout the United States.

**D.     Impact on Plaintiffs' Businesses and Plaintiffs' Insurance Claims**

47. As a result of the COVID-19 pandemic and the related and government-issued closure orders, Plaintiffs were forced to temporarily close their businesses or restrict these businesses to delivery or serving take-out only customers.

48. As a result of the COVID-19 pandemic and the related and government issued closure orders, Plaintiffs have suffered a loss of business income.

49. Numerous businesses nationwide were similarly forced to suspend or reduce their operations as a result of the COVID-19 pandemic and the related and government-issued closure orders, and suffered loss of business income as a result.

50. The COVID-19 pandemic and the closure of a business by the State of California, City of San Diego, or other governmental authority, constitute direct physical loss or damage under the insurance policies.

51. Plaintiffs' inability to operate in the pre-pandemic ordinary course of business constitutes direct physical loss or damage under the insurance policies.

52. Certain terms of Plaintiffs' insurance policies purport to contain purported virus exclusions.

53. The policies' purported virus exclusion is inapplicable to Plaintiffs' claims and does not bar Plaintiffs' recovery.

54. Defendants drafted these insurance policies, which are adhesion contracts.

55. Defendants never intended the purported virus exclusion to apply in circumstances similar to the COVID-19 pandemic and related government-issued closure orders.

56. The Plaintiffs never understood the purported virus exclusion to apply in circumstances similar to the COVID-19 pandemic and related government-issued closure orders.

57. The purported virus exclusion is void against public policy.

58. Plaintiffs' losses were not proximately caused by the SARS-CoV-2 virus, but rather by the government-issued closure orders.

59. Although insurance companies including Defendants often include in their policies exclusions specifically denying recovery for losses arising from a pandemic, Defendants did not include such pandemic exclusions in Plaintiffs' insurance policies.

60. Any ambiguity in Plaintiffs' insurance policies as to whether the losses alleged herein are covered under the policies must be construed in favor of coverage. The policy terms were drafted exclusively by Defendants.

61. At all relevant times Plaintiffs have paid all required premiums on their insurance policies and have otherwise performed all of their obligations thereunder.

**E.     Defendants' Denial of Plaintiffs' Insurance Claims**

62. As a result of the foregoing alleged facts, Plaintiff Park 101 LLC submitted a claim to Defendants for coverage under its insurance policy. Defendants denied that claim.

63. As a result of the foregoing alleged facts, Plaintiff Louisiana Purchase LLC submitted a claim to Defendants for coverage under its insurance policy. Defendants denied that claim.

64. Based on information and belief, Defendants have denied and/or intend to deny coverage to their other insureds nationwide in a similar manner for covered losses similar to those suffered by Plaintiffs.

## CLASS ACTION ALLEGATIONS

65. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a proposed class consisting of:

> All persons and entities in the United States insured under a Liberty Mutual policy for business income, extra expense, or civil authority coverage, who suffered a covered loss related to the COVID-19

pandemic and the related government-issued closure orders, which loss was denied by Defendants.

Excluded from the Class are Defendants; entities under common control with the Defendants; the directors and officers of the Defendants and members of their immediate families; and the legal representatives, heirs, successors, or assigns of the foregoing.

66. Plaintiffs also assert claims on behalf of a proposed California Sub-Class consisting of:

> All persons and entities in California insured under a Liberty Mutual policy for business income, extra expense, or civil authority coverage, who suffered a covered loss related to the COVID-19 pandemic and the related government-issued closure orders, which loss was denied by Defendants.

Excluded from the California Sub-Class are Defendants; entities under common control with the Defendants; the directors and officers of the Defendants and members of their immediate families; and the legal representatives, heirs, successors, or assigns of the foregoing.

67. The members of the Class are so numerous that joinder of all members is impracticable. Defendants and their affiliates operate the fourth largest property and casualty insurance business in the United States, writing over $35 billion in premiums in 2019. Plaintiffs believe the Class has at least thousands of members.

68. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to all members of the Class which predominate over questions that may affect individual Class members include:

   a) Whether the Defendants breached the express terms of their insurance policy contracts by denying claims for covered losses;

   b) Whether the Defendants breached the covenant of good faith and fair dealing by evading the spirit of the insurance policies;

c)      Whether the COVID-19 pandemic and related government-issued closure orders give rise to covered losses under Defendants' policies for business income coverage;

d)      Whether the COVID-19 pandemic and related government-issued closure orders give rise to covered losses under Defendants' policies for extra expense coverage;

e)      Whether the COVID-19 pandemic and related government-issued closure orders give rise to covered losses under Defendants' policies for civil authority coverage;

f)      Whether Defendants' denials of Plaintiffs' and California Sub-Class members' claims constitute unfair, unlawful, or fraudulent business practices; and

g)      The extent of damages sustained by Class members and the appropriate measure of damages.

69. Plaintiffs' claims are typical of those of the Class because Plaintiffs and the Class sustained damages from Defendants' identical breaches. Based on information and belief Defendants' insurance policies employ uniform terms and conditions, and Defendants interpret these policies in a uniform manner.

70. Plaintiffs will fairly and adequately assert and protect the interests of the Class. Plaintiffs have retained counsel who are experienced in class action litigation. Plaintiffs have no interests that conflict with those of the Class. Plaintiffs and their attorneys have adequate financial resources to assure that the interests of the Class will not be harmed.

71. Prosecuting separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Defendants.

72. Defendants have acted or refused to act on grounds that apply generally to the Class, so that final declaratory relief is appropriate respecting the Class as a whole.

73. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because:

    a) Common questions of law and fact predominate over any question affecting only individual Class members as discussed above;

    b) The potential interest of Class members in individually controlling the prosecution of separate actions is negligible because this action seeks the same relief that would be sought in separate actions;

    c) It is desirable to concentrate the litigation of Class members' claims in this forum because, based on information and belief, Defendants' transact business with numerous insureds in this District; and

    d) Managing Class members' claims as a class action will not present any particular difficulties, on the contrary, managing Class members' claims as a class action will provide significant efficiencies due to the predominance of common questions of law and fact.

## COUNT I
## BREACH OF CONTRACT

74. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein. This claim is asserted against all Defendants on behalf of the Class.

75. Plaintiffs and the Class entered into contractual insurance policies with Defendants for business income coverage, extra expense coverage, and civil authority coverage.

76. Plaintiffs and the Class have paid all required premiums and otherwise performed all obligations under their insurance policies.

77. Defendants have breached the terms of these insurance policies by refusing to pay claims for covered losses arising from the COVID-19 pandemic and the related government-issued closure orders.

78. Plaintiffs and the Class were damaged by Defendants' breach of contract.

## COUNT II

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

79. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein. This claim is asserted against all Defendants on behalf of the Class.

80. Plaintiffs and the Class entered into contractual insurance policies with Defendants for business income coverage, extra expense coverage, and civil authority coverage.

81. Every contract imposes upon each party a duty of good faith and fair dealing in the contract's performance.

82. Plaintiffs and the Class have performed under the insurance policies in good faith at all relevant times.

83. Defendants have breached the covenant of good faith and fair dealing implied in their insurance policies by evading the spirit of those policies in order to deny coverage to Plaintiffs and the Class for covered losses arising from the COVID-19 pandemic and the related government-issued closure orders.

84. Plaintiffs and the Class were damaged by Defendants' breach of the covenant of good faith and fair dealing.

## COUNT III

## UNFAIR BUSINESS PRACTICES

85. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein. This claim is asserted against all Defendants on behalf of the California Sub-Class.

86. Defendants' actions alleged herein constitute unfair, unlawful, and fraudulent business acts and practices pursuant to California Business and Professions Code § 17200, *et seq.*

87. Defendants' unlawful actions include, inter alia, wrongfully denying coverage for losses that should be covered under the terms of Defendants' insurance policies.

88. Defendants' unfair actions include, inter alia, engaging in conduct that is immoral, unethical, oppressive, unscrupulous, and substantially injurious, such that the harm to Plaintiffs and the California Sub-Class outweighs any utility of such conduct.

89. Defendants' fraudulent actions include, inter alia, accepting premiums without intending to extend coverage under the terms of their insurance policies.

90. Plaintiffs and the California Sub-Class were damaged by Defendants' unfair, unlawful, and fraudulent business acts and practices.

## COUNT IV
## DECLARATORY RELIEF

91. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein. This claim is asserted against all Defendants on behalf of the Class.

92. Pursuant to 28 U.S.C. § 2201 an actual controversy exists between Plaintiffs and the Class on the one hand, and Defendants on the other hand, as to the correct interpretation of their insurance policies.

93. Plaintiffs seek a declaration that losses suffered relating to the COVID-19 pandemic and related government closure orders give rise to compensable covered losses under the terms of their business income coverage, extra expense coverage, and civil authority coverage.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class pray for judgment as follows:

(a) Declaring this action to be a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class and the California Sub-Class as defined herein;

(b) Awarding Plaintiffs and the members of the Class compensatory damages in an amount which may be proven at trial;

(c) Awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, experts' fees, and other costs;

(d) Declaring that losses suffered relating to the COVID-19 pandemic and related government closure orders give rise to compensable covered losses under the terms of Class members' business income coverage, extra expense coverage, and civil authority coverage; and

(e) Awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Dated: May 26, 2020

**GLANCY PRONGAY & MURRAY LLP**

By: */s/ Kevin F. Ruf*
Kevin F. Ruf (136901)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

**GLANCY PRONGAY & MURRAY LLP**
Lee Albert (*pro hac vice forthcoming*)
Garth Spencer (*pro hac vice forthcoming*)
230 Park Avenue, Suite 530
New York, New York 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: lalbert@glancylaw.com
Email: gspencer@glancylaw.com

*Attorneys for Plaintiffs Park 101 LLC
and Louisiana Purchase LLC*

CLASS ACTION COMPLAINT