UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARK 101 LLC and LOUISIANA PURCHASE LLC dba LOUISIANA PURCHASE SD,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN FIRE and CASUALTY COMPANY and OHIO SECURITY INSURANCE COMPANY,<br><br>Defendants. | Case No.: 20-cv-00972-AJB-BLM<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>**(Doc. No. 31)** |

This action concerns claims of insurance coverage brought forth by Park 101 LLC and Louisiana Purchase LLC (doing business as Louisiana Purchase SD) (collectively, "Plaintiffs") against American Fire and Casualty Company and Ohio Security Insurance Company (collectively, "Defendants"). Plaintiffs' suit came in the wake of the COVID-19 public health crisis, and government emergency orders relating thereto. It is not the first of its kind. The pandemic has severely affected, and continues to affect, small businesses across the United States. COVID-19 insurance cases have been and continue to be litigated across the nation. Presently before this Court is Defendants' motion to dismiss Plaintiffs' First Amended Class Action Complaint ("FAC"). Plaintiffs filed an opposition, to which Defendants replied. (Doc. Nos. 37, 40). Upon careful consideration of the insurance policy

1

and applicable case law, and as more fully set forth below, the Court **GRANTS** Defendants' motion.

## I. BACKGROUND

Plaintiffs bring forth this action on behalf of themselves and on behalf of more than 100 class members consisting of all persons and entities in California insured under a comprehensive business insurance policy by Defendants. (Doc. No. 24 ¶¶ 2, 4.) According to the FAC, Park 101 LLC entered into an insurance contract with American Fire and Casualty Company for a policy period of May 21, 2019 through May 21, 2020 ("Policy").[1] (*Id.* at ¶ 12.) Louisiana Purchase LLC entered into an insurance contract with Ohio Security Insurance Company for a policy period of March 5, 2020 through March 5, 2021. (*Id.* at ¶ 13.)

On March 4, 2020, California Governor Gavin Newsom declared a State of Emergency in California due to the threat of COVID-19. (*Id.* ¶ 37.) On March 16, 2020, San Diego Mayor Kevin Faulconer issued an executive order prohibiting all gatherings of 50 or more people. This order that also closed all bars and prohibited in-person dining at restaurants. (*Id.* ¶ 40.) Three days later, on March 19, 2020, Governor Newsom issued an executive order directing all residents to shelter-in-place. (*Id.* ¶ 41.)

Plaintiffs claim that the COVID-19 pandemic and related government-issued closure orders ("Closure Orders") forced Plaintiffs to "temporarily close their businesses or restrict these businesses to delivery or serving take-out only customers," resulting in loss of business income. (*Id.* at ¶¶ 43, 44.) More specifically, Plaintiffs contend their losses "were

---

[1] Defendants attached a copy of the Policies in their motion to dismiss. (Doc. No. 13 at Exhibit 1.) As Plaintiffs' complaint refers extensively to the Policy, and because the Policy forms the basis of their insurance coverage claims, the Court may consider its contents under the incorporation by reference doctrine. *Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663, 665 n.1 (9th Cir. 2009) ("A court may consider documents, such as the insurance policies, that are incorporated by reference into the complaint.").

not proximately caused by SARS-CoV-2 virus, but rather by the government-issued closure orders." (*Id*. at ¶ 54.) Accordingly, Plaintiffs allege their losses amount to covered losses under the business income, extra expense, and civil authority provisions of their Policy. (*Id*. at ¶ 70.) The Policy states, in pertinent part,

> **1. Business Income**
> . . .
> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be **caused by direct physical loss of or damage to property at premises** which are described in the Declarations . . . The loss or damage must be caused by or result from a Covered Cause of Loss.
> . . .
> **2. Extra Expense**
> Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no **direct physical loss or damage to property** caused by or resulting from a Covered Cause of Loss.
> …
> **5. Additional Coverages**
> a. Civil Authority
> We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises **due to direct physical loss of or damage to property, other than at the described premises**, caused by or resulting from any Covered Cause of Loss.
> . . .
> **Exclusion of Loss Due to Virus or Bacteria**
> B. We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness, or disease.

(Doc. No. 37 at 10–11 (emphasis added).)

Plaintiffs timely filed an insurance claim for coverage with Defendants, which Defendants denied. (Doc. No. 24 ¶¶ 58, 59.) Plaintiffs thereafter commenced this litigation in this Court and raised four causes of action: (1) breach of contract; (2) breach of covenant of good faith and fair dealing; (3) unfair business practices under California Business and Professions Code section 17200 e*t seq.,* ("UCL"); and (4) declaratory relief. Defendants' motion to dismiss for failure to state a claim followed.

3

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. Of Carpenters & Joiners of Am.,* 768 F.3d 938, 945 (9th Cir. 2014). A complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[W]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 664 (2009). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. 678, *citing Twombly,* 550 U.S. at 556.

## III. DISCUSSION

When deciding whether a policy provides coverage, the interpretation of that insurance policy is a question of law. *See Waller v. Truck Ins. Exch., Inc.,* 11 Cal. 4th 1, 18 (1995). To begin, the parties do not dispute that California law governs. *See, e.g., Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) ("Since this is a diversity action the law of the forum state, California, applies."). Under California law, the "interpretation of an insurance policy is a question of law" to be answered by the court. *Waller,* 11 Cal. 4th at 18. The "goal in construing insurance contracts, as with contracts generally, is to give effect to the parties' mutual intentions." *Minkler v. Safeco Inc. Co.*, 49 Cal. 4th 315, 321 (2010) (quoting *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992)). To do so, the court must "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller*, 11 Cal. 4th at 18; *see also Cont'l Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1080 (9th Cir. 1985) ("The best evidence of the intent of the parties is the policy language."). Generally, if the policy terms are clear and explicit, their ordinary and popular

interpretation governs. *Minkler*, 49 Cal. 4th at 321. But if the terms are ambiguous or susceptible to more than one reasonable interpretation, courts "interpret them to protect the objectively reasonable expectations of the insured." *Id.* However, "[c]ourts will not strain to create an ambiguity where none exists." *Waller*, 11 Cal. 4th at 18–19.

In this case, Defendants primarily argue that Plaintiffs failed to allege "direct physical loss of or damage" within the ordinary and popular meaning of that phrase to trigger coverage under the Policy. And, moreover, Defendants claim that Plaintiffs' claimed losses are barred by the Virus Exclusion.[2] (*See generally* Doc. No. 31.) Plaintiffs, on the other hand, primarily argue that "direct physical loss" does not only mean a physical, distinct alteration of sorts but also the inability to use the property or temporary dispossession of the property. (*See generally* Doc. No. 37.) The Court will discuss each argument in turn.

### A. Business Income and Extra Expense Provisions

According to the FAC, the Policy covers business income lost when business operations are suspended due to a covered cause of loss, but the "suspension must be caused by direct physical loss of or damage to property at the described premises." Similarly, the Policy covers extra expenses incurred during a period of restoration that the insured "would

---

[2] Defendants also request the Court to take judicial notice of various documents. (Doc. Nos. 13-1, 31-2.) Federal Rule of Evidence 201 states that a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Here, Defendants request judicial notice of the certified copies of the Policies and the government health orders referenced in Plaintiffs' Complaint. Upon review of the documents, the Court finds that its contents are either generally known or can be accurately and readily determined from credible sources. There is no dispute as to the Policies' authenticity, and government publications "are matters of undisputed public record" of which the Court can take judicial notice. *Quan v. Smithkline Beecham Corp.*, 149 F. App'x 668, 689 (9th Cir. 2005) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)). Plaintiffs do not contend otherwise. Accordingly, the Court **GRANTS** Defendant's request for judicial notice.

not have incurred if there had been no direct physical loss of or damage to property." (Doc. No. 31 at 18.) Plaintiffs' arguments focus on the "direct physical loss of" property prong of the provision. While neither the Policy nor Defendants define the terms "physical" or "loss," "[t]he fact that a term is not defined in the policies does not make it ambiguous." *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 857, 868 (1998). The terms of a contract "must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." *Id.* (citation omitted).

In Plaintiffs' view, "direct physical loss of" property includes the inability to use the property." (Doc. No. 37 at 21.) On the other hand, Defendants maintain that there must be a "distinct, demonstrable, physical alteration" to the property. (Doc. No. 31 at 19.) However, as the district court in *10E, LLC v. Travelers Indemn. Co. of Connecticut* stated, ". . . losses from inability to use property do not amount to 'direct physical loss of or damage to property' within **the ordinary and popular meaning of that phrase**. Physical loss or damage occurs only when property undergoes a distinct, demonstrable, physical alteration." 483 F. Supp. 3d 828, 835–36 (C.D. Cal. 2020) (quoting *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.,* 187 Cal. App. 4th 766, 779 (2010)) (emphasis added).

Plaintiffs attempt to distinguish *10E, LLC/MRI Healthcare* by pointing out that the language interpreted in that case was the sole phrase, "direct physical loss to" property—as opposed to the disjunctive phrase, "direct physical loss of or damage to" property, as in this case. (Doc. No. 37 at 23 n.10.) Plaintiffs contend the phrase "loss to property" could suggest an "external force" acting on the property whereas "loss of property" could suggest dispossession. The Court is not persuaded that the difference is meaningful one. For one, "[a]n insured cannot recover by attempting to artfully plead temporary impairment to economically valuable use of property as physical loss or damage." *10E, LLC*, 483 F. Supp. 3d at 836.

Second, the Court is further unpersuaded by Plaintiffs' reliance on *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.* for an expansive view of the phrase "direct physical loss of" property.³ 2018 WL 3829767, at *1 (C.D. Cal. July 11, 2018). In *Total Intermodal*, the plaintiff filed an insurance claim for cargo that was inadvertently returned to China and later destroyed. *Id.* There, the court concluded that in the absence of physical damage, "the phrase 'loss of' includes the permanent dispossession of something." *Id.* at *4. Here, Plaintiffs do not and cannot allege that they have been permanently dispossessed of property. At most, Plaintiffs can allege that they were temporarily dispossessed of a service of their business. Thus, the Court finds *Total Intermodal* is inapplicable to this case. And, it is not just this Court that finds so. A resounding majority of decisions support an insurer's position that business losses arising out of COVID-19 do not constitute as direct physical loss or damage. *See Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 487 F. Supp. 3d 937, 944 (S.D. Cal. 2020); *Mark's Engine Co. No. 28 Restaurant, LLC v. Travelers Indemn. Co. of Conn.,* No. 2:20-cv-00423-AB-SK, (C.D. Cal. Oct. 02, 2020).

In fact, none of the cases Plaintiffs cited in support of their position involved COVID-19 related closures. Rather, the cited cases involved property rendered unusable from ammonia release, collapse of another part of a building, wind damage, and missing inventory. These cases additionally cut against Plaintiffs' position, as the authority emphasize that physical loss or damage relates to the ordinary and popular meaning of the phrase, a definition which requires a distinct, tangible, actual, demonstrable, or literal physical damage or loss to property. (Doc. No. 37 at 24, 25.)

What's more, a California Court of Appeal in *Ward Gen. Ins. Servs., Inc. v.*

---

³ Plaintiffs also rely on various out-of-state cases. However, as a federal court sitting in California, this Court is bound to follow the law and precedent as established by California courts in interpreting California law for this dispute. While the parties are welcome to reference other state court's opinions as persuasive guidance, where there are California cases on point, the Court considers those authoritative.

*Employers Fire Ins. Co.* considered the very phrase "direct physical loss of or damage to" property in the context of a plaintiff who lost information stored in a computer database. 114 Cal. App. 4th 548, 553–54 (2003). The *Ward* court found that the words "direct physical" modifies both "loss of" and "damage to." *Id.* at 554. After examining the ordinary and popular sense of the word "physical," the court held, "we say with confidence that the loss of plaintiff's database [information] does not qualify as a 'direct physical loss,' unless the database has a material existence, formed out of tangible matter, and is perceptible to the sense of touch." *Id.* at 556.

Nevertheless, Plaintiffs here maintain that they were "unable to access and utilize their dining facilities and thus the business income therefrom," constituting a loss. (Doc. No. 27 at 23.) The Court disagrees. Like in *Ward*, the Court finds that Plaintiffs' loss of its on-site dining use, "with its consequent economic loss, but with no loss of or damage to tangible property, [is] not a 'direct physical loss of or damage to' covered property under the terms of the subject insurance policy, and, therefore, the loss is not covered." *Ward*, 114 Cal. App. 4th at 556–57.

Plaintiffs also argue that Defendants' interpretation of "direct physical loss of" is, in effect, synonymous to "physical damage to," and is both superfluous and an overly expansive interpretation of this clause. (Doc. No. 37 at 21–22.) According to Plaintiffs, "[i]f Defendants wanted the phrase to be synonymous with 'physical damage to,' or somehow limited to material alteration, they could have expressly defined it that way in the policy." (Doc. No. 37 at 22.) While Plaintiffs did not expressly assert it as such, Plaintiffs appear to be alleging that Defendants' use of the terms "loss of" property and "damage to" property is redundant. *See Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 753 (1993) ("The way we define words should not produce redundancy, but instead should give each word significance."). While Plaintiffs' position finds some support in the ordinary rules of contract interpretation, the Court does not find that the slight redundancy in this particular context to be fatal. "The whole of a contract is to be

8

taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641.

Taking the contract as a whole, here, the business income and extra expenses provisions contain terms such as "period of restoration" and "repaired, rebuilt, or replaced." (Doc. No. 31 at 24.) The ordinary and popular definitions of these terms strongly indicate that the "physical loss" contemplated by the Policy requires, as the aforementioned California cases state, some distinct, demonstrable, physical alteration of the property. *See Merriam-Webster's Online Dictionary* (2021) (defining (1) restoration as "a bringing back to a former position or condition" or "a restoring to an unimpaired or improved condition"; (2) repair as "to restore by replacing a part or putting together what is torn or broken" or "to restore to a sound or healthy state"; (3) rebuilt as "to make extensive repairs" or "to restore to a previous state"; and (4) repair as "to restore to a former place or position" or "to take the place of especially as a substitute or successor"). Interpreting the Policy in its context and with the assistance of surrounding terms, the Court finds that without some tangible physical alteration to the property, there would be no need to restore, repairs, rebuild, or replace. *See Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999) ("When interpreting a policy provision, we must give its terms their ordinary and popular sense . . . . We must also interpret these terms in context . . . and give effect to every part of the policy with each clause helping to interpret the other.") (citation omitted); *Waller*, 11 Cal. 4th at 18 (same).

Moreover, as the district court in *Plan Check Downtown III, LLC v. AmGuard Ins. Co.* persuasively explained in the context of COVID-19, Plaintiffs' interpretation "is not a reasonable one because it would be a sweeping expansion of insurance coverage without any manageable bounds." 485 F. Supp. 3d 1225, 1226 (C.D. Cal. 2020). For example, the court illuminated that the following scenarios would trigger insurance coverage under the plaintiff's expansive view: (1) a city changes its maximum occupancy codes to lower the caps, meaning that a particular restaurant can no longer seat as many customers as it used to; (2) a city amends an ordinance requiring restaurants located in residential zones to cease

9

operations between 1:00 a.m. and 5:30 a.m. to expand the window to 12:00 a.m. to 6:00 a.m.; (3) a city issues a mandatory evacuation order to all of its residents due to nearby wildfires (a consequence of this is that all businesses must suspend operations), but lifts the order three weeks later when the wildfires are extinguished without, fortunately, any destruction of property. The Court here agrees that to adopt Plaintiffs' view would be to reach an overbroad view of "physical loss."

Thus, for the foregoing reasons, the Court finds that the resulting redundancy is not fatal and the Business Income and Extra Expense Provisions have not been triggered. *See Flintkote Co. v. General Acc. Assur.* Co., 410 F. Supp. 2d 875, 890 (N.D. Cal. 2006) (noting that "[t]he fact that some redundancy results is not fatal" where the "the court has adopted the only reasonable construction of the contract").

**B. Civil Authority Provision**

Plaintiffs also allege that they have established coverage under the "Civil Authority" coverage extension of the Policy because they have alleged that the Closure Orders caused the restaurants to close down, and as a result, they lost business income. (Doc. No. 24 ¶¶ 43–45.) The Civil Authority coverage kicks in when the insured incurs loss of business income and extra expenses as a result of civil authority action. Defendants argue that Civil Authority coverage does not apply for four reasons: (1) Civil Authority provision only comes into play when there is "direct physical loss of or damage to" the covered property, and, just like the Business Income provision, Plaintiffs have failed to demonstrate a "physical loss;" (Doc. No. 31 at 17); (2) Plaintiffs fail to establish the causal link required by the Civil Authority provision, (*id.*); (3) Civil Authority provision requires prohibition of access to the premises (*id*. at 18); and (4) the Civil Authority actions are not triggered from "fear of future harm." (*Id*. at 18–19.)

First, as discussed above, the Court agrees with Defendants in that Plaintiffs have failed to demonstrate a physical loss to even warrant a discussion regarding the Civil Authority provision. Second, as to Plaintiffs' contention about the causal link, Plaintiffs fail to show the government closure *caused* the alleged physical loss. According to the

FAC, "the COVID-19 pandemic and the related and government issued closure orders" caused Plaintiffs to temporarily close or restrict their businesses, resulting in a loss of income. (Doc. No. 24 ¶¶ 43, 44.) For Plaintiffs, "[C]ivil Authority measures were enacted as a result of the need for the government to enact measures to flatten the curve and slow down the spread." (Doc. No. 37 at 29.) And, accordingly, Plaintiffs argue that "determining the predominating cause and/or causes of the Closure Orders involve complex issues that should be decided by the trier of fact and cannot be decided here on a motion to dismiss." (Doc. No. 37 at 29.) Plaintiffs, however, overlook the fact that the Civil Authority provision is triggered if civil authority "prohibits access" to the premises. (Doc. No. 31 at 15.)

Taking the language of the provision as is, the Court finds that Plaintiffs have not plausibly alleged that the Closure Orders prohibited access to their property. In fact, the FAC indicates that the March 16 order prohibited merely "in-person" dining, (Doc. No. 24 ¶ 40), but allowed for permitted patrons to access the property to purchase food and beverages for delivery or take-out services. (Doc. No. 24 ¶¶ 43, 44.) On that same token, the Court notes that the Civil Authority coverage provision provides coverage only to the extent that access to Plaintiffs' physical premises is prohibited—not if Plaintiffs are simply prohibited from operating the on-site consumption aspect of their business.[4]

Second, even assuming that the Closure Orders prohibited access to Plaintiffs' premises, the orders were not were not issued "due to direct physical loss of or damage to property, other than at the described premises." As Defendants correctly noted, the FAC is void of any allegations that (at the very least) virus particles were on surfaces on the

---

[4] Plaintiffs in their opposition argue that "while Plaintiffs' employees might not have been prohibited from accessing the premises, customers were prohibited. Since customers are necessary for business income, 'access' under the terms of the Policies should encompass access by customers." (Doc. No. 37 at 29.) As repeatedly emphasized throughout the Court's opinion, the basic rule of contract interpretation requires the Court to not create ambiguity where none exists. *Waller,* 11 Cal. 4th at 18–19. Here, the Court does not find the word "access" is ambiguous in that it refers to customers' access because the contract was entered between the insurer and insured; therefore, "access" in its most obvious sense would refer to the insured's access to the property, not customers' access to the property.

11

property. Additionally, the FAC does not plausibly allege a direct physical loss of or damage to property *other* than Plaintiffs' premises. The text of the Closure Orders makes clear that they were issued as general precautionary measures "to stem the spread of the virus and protect public safety and welfare," (Doc. No. 31-2 at 11), and to "slow the pace of community spread and avoid unnecessary strain on our medical system." (*Id*). Nowhere is the presence of COVID-19 in the *surrounding areas* of Plaintiffs' premises cited as the impetus for the Closure Orders. Accordingly, for the reasons stated, the Court finds that Plaintiffs have not alleged a covered loss under the Civil Authority provision.

### C. Viability of Plaintiffs' Causes of Action

While the Court is sympathetic to Plaintiffs' situation, it must find, as a matter of law, that their insurance claims are not covered by the Policy.[5] And as Plaintiffs' causes of action for breach of contract, breach of covenant of good faith and fair dealing, unfair business practices, and declaratory relief all rely upon the existence of coverage under the Policy, they will be dismissed. *See, e.g.*, *Waller*, 11 Cal. 4th at 36 ("It is clear that if there is no *potential* for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer.").

In light of the foregoing, the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' FAC. (Doc. No. 31.) The Court notes that the overwhelming majority of California courts to have considered the issues raised in Plaintiffs' FAC have concluded that temporarily closing a business due to government closure orders during the pandemic

---

[5] Defendant also argues that the virus exclusion provision also precludes coverage in this case. On the other hand, Plaintiff argues that the terms "virus" and "cause" in the virus exclusion provision are ambiguous, and, therefore, should not be decided at the pleading stage. (Doc. No. 37 at 14.) Even if Plaintiffs are correct, considering the Court's finding that the business income, extra expenses, and civil authority provisions were not met, the Court need not address the Virus Exclusion provision.

12

20-cv-00972-AJB-BLM

does not constitute a direct loss of property under insurance policies. *See supra* § III.A. Any amendment is therefore likely to be futile. As such, the FAC is **DISMISSED WITHOUT LEAVE TO AMEND**. The Clerk of Court is **DIRECTED** to **CLOSE THE CASE**.

**IT IS SO ORDERED**.

Dated: June 29, 2021

Hon. Anthony J. Battaglia
United States District Judge